Slip Op. 07-100

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ————————————————— : | |
| PAUL MÜLLER INDUSTRIE GMBH : | |
| & CO. et al., : | |
| : | |
| Plaintiffs, : | |
| : | Before:        WALLACH, Judge |
| v. : | Consol. Court No.:    04-00522 |
| : | |
| UNITED STATES, : | |
| : | **PUBLIC VERSION** |
| Defendant, : | |
| : | |
| and : | |
| : | |
| TIMKEN US CORPORATION, : | |
| : | |
| Defendant-Intervenor. : | |
| —————————————————: | |

[The United States Department of Commerce's Final Remand Determination on Antifriction
Bearings and Parts Thereof from France, Germany, Italy, Japan, Singapore, and the United
Kingdom is AFFIRMED.]

Dated: June 29, 2007

Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, (Bruce M. Mitchell, Mark E. Pardo
and William F. Marshall) for Plaintiffs Paul Müller Industrie GmbH & Co., FAG Kugelfischer
AG, FAG Italia S.p.A., Barden Corporation (U.K.) Limited, FAG Bearings Corporation and The
Barden Corporation.

Steptoe & Johnson LLP (Herbert C. Shelley, Alice A. Kipel and Susan R. Gihring) for Plaintiffs
SKF USA Inc., SKF France S.A., Sarma, SKF GmbH, and SKF Industrie S.p.A.

Peter D. Keisler, Assistant Attorney General; Claudia Burke International Trade Field Office,
Commercial Litigation Branch, Civil Division, U.S. Department of Justice; and Mykhaylo A.
Gryzlov, Attorney, Office of Chief Counsel for Import Administration, U.S. Department of
Commerce, of Counsel, for Defendant United States.

Stewart and Stewart (Geert De Prest, Terence P. Stewart and William A. Fennell) for Defendant-
Intervenor Timken US Corporation.

**OPINION**

**Wallach, Judge:**

**I**
**INTRODUCTION**

This matter comes before the court following its remand on May 26, 2006, to the United States Department of Commerce ("Commerce" or "the Department").  In Paul Müller Industrie GmbH & Co. v. United States, 435 F. Supp. 2d 1241 (CIT 2006) ("Paul Müller I"), the court remanded in part the Department's determination for Paul Müller Industrie GmbH & Co. ("Paul Müller") in the administrative review of the antidumping duty order on antifriction bearings and parts thereof from Germany in Antifriction Bearings and Parts Thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom: Final Results of Antidumping Duty Administrative Reviews, Rescission of Administrative Reviews in Part, and Determination to Revoke Order in Part, 69 Fed. Reg. 55,574 (September 15, 2004) ("Final Results") (as amended by Ball Bearings and Parts Thereof from Germany; Amended Final Results of Antidumping Duty Administrative Review, 69 Fed. Reg. 63,507 (November 2, 2004) ("Amended Final Results")).

In Paul Müller I the court granted Commerce's request for remand to fully explain its calculation of Paul Müller's inventory carrying costs, and if necessary open the record for additional information. Paul Müller I, 435 F. Supp. 2d at 1247.  The court also granted the Department's request for a remand to correct a clerical error regarding Paul Müller's margin program. Id.  This court has jurisdiction pursuant to 28 U.S.C. § 1581(c).  For the reasons that follow, Commerce's Remand Determination is affirmed.

2

## II
## BACKGROUND

On September 15, 2004, Commerce published in the Federal Register its <u>Final Results</u> of

its review of the antidumping duty orders on antifriction bearings and parts thereof from France,

Germany, Italy, Japan, Singapore, and the United Kingdom covering the period of review from

May 1, 2002, through April 30, 2003. <u>Final Results</u>, 69 Fed. Reg. at 55,574.  The scope of this

order covers antifriction balls, ball bearings with integral shafts, ball bearings (including radial

ball bearings) and parts thereof, and housed or mounted ball bearing units and parts thereof. <u>Final</u>

<u>Results</u>, 69 Fed. Reg. at 55,575.

The court remanded this matter in part upon Commerce's request to allow the

Department to explain its calculation of Paul Müller's carrying costs and to correct a clerical

error regarding Paul Müller's margin program.[1]  <u>Paul Müller I</u>, 435 F. Supp. 2d at 1247.  Oral

argument concerning Commerce's Remand Determination was held on April 24, 2007.

## III
## STANDARD OF REVIEW

This court will sustain Commerce's determinations, findings, or conclusions unless they

are "unsupported by substantial evidence on the record, or otherwise not in accordance with

law." 19 U.S.C. § 1516a(b)(1)(B); <u>Magnesium Corp. of Am. v. United States</u>, 166 F.3d 1364,

1368 (Fed. Cir. 1999).  Substantial evidence has been defined as "such relevant evidence as a

---

[1] None of the parties commented on the Department's correction of the billing adjustment in the margin calculations, which involved an inadvertent change in the value of all observations for a particular invoice number instead of changing one observation as was intended. <u>Paul Müller Industrie GmbH & Co. v. United States</u>, 435 F. Supp. 2d at 1247 ("<u>Remand Determination</u>"). Upon review of the adjustment, and having received no comments from the parties, the correction in the margin calculations is affirmed and will not be discussed below.

reasonable mind might accept as adequate to support a conclusion" and "more than a mere

scintilla." Nippon Steel Corp. v. United States, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (quoting

Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed 126 (1938)).  Under

this standard the court does not substitute its own judgment for that of the agency, and the

possibility of drawing two inconsistent conclusions from the evidence presented does not

necessarily prevent the agency's findings from being supported by substantial evidence. Negev

Phosphates, Ltd. v. United States, 12 CIT 1074, 1076-77, 699 F. Supp. 938 (1988); Consolo v.

Fed. Mar. Comm'n, 383 U.S. 607, 619-20, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966) (citing NLRB

v. Nevada Consolidated Copper Corp., 316 U.S. 105, 106, 62 S. Ct. 960, 86 L. Ed. 1305 (1942)).

The court uses a two step analysis to determine the level of deference to give an agency's

statutory interpretation.  Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc. et al., 467 U.S.

837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).  The court examines, first, whether

"Congress has directly spoken to the precise question at issue," in which case, courts "must give

effect to the unambiguously expressed intent of Congress." Id. at 842-43.  If Congress instead left

a gap for the agency to fill, the agency's regulation is "given controlling weight unless [it is]

arbitrary, capricious, or manifestly contrary to the statute." Id. at 843-44.  The Court of Appeals

for the Federal Circuit has held that statutory interpretation by Commerce is entitled to

deferential treatment by the courts in their review under Chevron.  Pesquera Mares Australes

Ltda. v. United States, 266 F.3d 1372, 1382 (Fed. Cir. 2001).

**IV**
**DISCUSSION**

The court remanded this matter at the request of Commerce for further explanation of the

Department's calculation of Paul Müller's carrying costs in its home and U.S. markets, and to

address the assertion made by Defendant-Intervenor Timken US Corporation ("Timken") that

Commerce's treatment of Paul Müller's home market was inconsistent with its treatment of its

U.S. carrying costs. Paul Müller I, 435 F. Supp. 2d at 1247.  Upon remand, the Department

determined that Paul Muller valued its inventory with respect to its home market carrying costs

based on its own cost of goods sold, and its U.S. sales by applying its interest rate factor to the

entered value of each model that represents the transfer price to its U.S. affiliate. Final Remand

Determination, Paul Müller Industrie GmbH & Co. v. United States, Consol. Court No. 04-00522

(September 13, 2006) ("Remand Determination") at 3.  After reviewing the record, Commerce

determined that there was information available that would allow it to calculate inventory

carrying costs in both markets on a consistent basis. Id. at 4.  The Department thus recalculated

the U.S. and home market costs to reflect the respective cost of producing each model on a per-

unit cost. Id.  In response, Timken argued that the Department still needs to account for U.S.

carrying costs incurred on an ex-factory basis, as it did for the home market side. Id.  Timken

suggested that the sum of the time in inventory in the home market, the transit time, and the time

in inventory in the U.S. would be a more accurate approach for the calculation. Id.  The

Department responds in its Remand Determination that its longstanding practice is to treat in-

transit inventory carrying costs as indirect selling expenses relating to the sale to the affiliate,

rather than associated with economic activity in the U.S. market. Id. (citing Stainless Steel Butt-

<u>Weld Pipe Fittings From Taiwan: Final Results of Antidumping Duty Administrative Review</u>, 63 Fed. Reg. 67,855, 67,856 (December 9, 1988) ("<u>Stainless Steel Final Results</u>")).  In this case, Commerce determined that both in-transit carrying costs and time in inventory in the home market are not associated with U.S. economic activity or the resale of the merchandise. <u>Id.</u> at 5. Timken also suggested that Commerce consider the entered value as the cost of goods upon entry to the U.S., to which the Department responded that there was sufficient information to allow Commerce to calculate cost factors that better reflect the respective cost in the two markets. <u>Id.</u> at 4, 6.

**A**
**Timken Waived its Argument Regarding Freight, Duty, and Brokerage Fees by Failing to Raise it in Agency Proceedings**

In Timken US Corporation's Comments on Commerce's Remand Results ("Timken's Comments"), Timken argues that for U.S. inventory, the estimate of inventory cost must account for costs incident to the transaction between the producer and the U.S. affiliate such as transportation costs, duties, and brokerage fees. Timken's Comments at 2.  According to Timken, the statute reflects that additional costs are incurred to transport and sell the product where it provides for the adjustment of U.S. prices for "any additional costs, charges, or expenses, and United States import duties, which are incident to bringing the subject merchandise from the original place of shipment in the exporting country to the place of delivery in the United States." <u>Id.</u> at 3 (quoting 19 U.S.C § 1677a(c)(2)(A)).  Timken requests that the Department adjust the value of the products in U.S. inventory to reflect those costs.

Defendant responds that the methodology used in the remand was reasonable because it allocates expenses in a consistent way and comports with the Department's prior practice.[2] Defendant's Response to Timken's Comments upon the Results of the Final Remand Determination ("Defendant's Response") at 6.  Additionally, Defendant notes that Timken advocated the result reached in the Remand Determination in the administrative case brief it filed after Commerce's preliminary results, and only changed its position during the remand proceedings. Id. (citing Timken's Case Brief at 22, Public Record at 213; Timken's Rule 56.2 Motion for Judgment on the Agency Record at 24). Defendant asserts that in this case Timken is requesting that Commerce add expenses incurred overseas and relating solely to sales from Paul Müller to its affiliated importer in the U.S. Id. at 8.  Defendant also argues that because Timken failed to present its argument after the preliminary results and the draft remand determination, Timken waived its right to raise the argument now. Id. at 9-10 (citing Carpenter Tech. Corp. v. United States, 464 F. Supp. 2d 1347 (CIT 2006)).  Counsel for Paul Muller added during oral argument that Exhibit N of Paul Muller's original Section A Questionnaire Response accounts for freight as "other expenses" which are directly deducted from the U.S. price. Defendant's Confidential Appendix, Tab 2, Response of Paul Müller Industrie GmbH & Co. KG to Antidumping Questionnaire Section A, Exhibit N.

Timken waived its right to raise the issue of freight, duties, and brokerage fees by failing to raise the issue before Commerce in the course of its review. See Ta Chen Stainless Steel Pipe

---

[2]  Plaintiff Paul Müller's Response Memorandum in Opposition to Timken US Corporation's Rule 59 Motion for Reconsideration (Paul Müller's Response) follows the arguments made by Defendant unless otherwise noted.  Plaintiff SKF declined to file commentary on the remand.  See Letter from SKF to the court dated December 21, 2007.

v. United States, 342 F. Supp. 2d 1191, 1205 (CIT 2004) (noting that all arguments relevant to a decision must be presented to the agency in case briefing).  The doctrine of exhaustion provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Sandvik Steel Co. v. United States, 164 F.3d 596, 599 (Fed. Cir. 1998) (quoting McKart v. United States, 395 U.S. 185, 193, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969)).  Timken failed to raise this challenge both after the Preliminary Results and in its remand comments to commerce.  A party that fails to exhaust administrative remedies waives the right to raise them on appeal. AIMCOR v. United States, 141 F.3d 1098, 1111-12 (Fed. Cir. 1998); Ta Chen Stainless Steel Pipe, 342 F. Supp. 2d at 1205.  As counsel for the United States asserted during oral argument, that Timken raised general issues regarding inventory carrying costs is not adequate to apprise Commerce of what it would need to specifically respond to regarding these additional issues.  Thus, Timken waived its right to argue that additional costs be considered upon appeal.

**B**
**The Department's Treatment of Paul Müller's Carrying Costs Upon Remand was Correct**

According to the Government, Commerce's regular practice is to treat in-transit carrying costs as indirect selling expenses related to the sale to the affiliate rather than associated with economic activity or the sale of the merchandise in the U.S. Defendant's Response at 7. Additionally, Defendant argues that the result Commerce reached upon remand is the result Timken advocated in the case briefs it filed before the agency and before this court; Timken only changed its position once it became apparent that the cost-based comparison would not result in more than a de minimis margin for Plaintiff. Id. at 6-7.

8

Commerce's treatment of Paul Müller's inventory carrying costs is supported by substantial evidence and is in accordance with law.  As there is no methodology mandated by statute for assessing inventory costs, Commerce has considerable discretion to determine its method of calculation. E.I. Dupont De Nemours & Co. v. United States, 22 CIT 220, 229, 4 F. Supp. 2d 1248, 1256 (1998); see Chevron, 467 U.S. at 842-43 (stating that when a statute is silent on a particular matter the court is only to assess whether the agency's interpretation is a permissible one).  In this case, Commerce used information on the record to calculate inventory costs based on the cost of manufacturing from both markets. Remand Determination at 3-4.  This change from the use of entered value for the U.S. market allowed Commerce to follow its prior practice of calculating inventory carrying costs based on the cost of manufacturing. See, e.g, Extruded Rubber Thread from Malaysia; Final Results of Antidumping Duty Administrative Review, 63 Fed. Reg. 12,752, 12,760 (March 16, 1998).  Additionally, as Commerce explains in its Remand Determination, it is the agency's practice to treat in-transit carrying costs as indirect selling expenses related to the sale to the affiliate rather than related to U.S. economic activity or the resale of the merchandise. Remand Determination at 4; see Stainless Steel Final Results, 63 Fed. Reg. at 67,856.  This approach is reasonable under the substantial evidence standard of review applicable to this case; Commerce need not recalculate the inventory carrying costs to account for the additional costs incident to the transaction between the producer and the affiliate, as Timken suggests.  In fact, the approach taken by Commerce in its Remand Determination is consistent with that advocated by Timken itself throughout the review until the determination was remanded.  As the approach used by Commerce to calculate Paul Müller's inventory

carrying costs is permissible under the antidumping statute, Commerce's Final Remand

Determination is affirmed.

**V**
**CONCLUSION**

For the above stated reasons, Commerce's Remand Determination is affirmed.

                        __/s/ Evan J. Wallach_____
                        Evan J. Wallach, Judge

Dated: June 29, 2007
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| _____ : | |
| PAUL MÜLLER INDUSTRIE GMBH : | |
| & CO., et al., : | |
| : | |
| Plaintiffs, : | |
| : | Before:        WALLACH, Judge |
| v. : | Consol. Court No.:    04-00522 |
| : | |
| UNITED STATES, : | |
| : | |
| Defendant, : | |
| : | |
| and : | |
| : | |
| TIMKEN US CORPORATION, : | |
| : | |
| Defendant-Intervenor. : | |
| _____: | |

ORDER AND JUDGMENT

Upon consideration of the U.S. Department of Commerce's ("Commerce") Final Remand Determination on Antifriction Bearings and Parts Thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom ("Remand Determination"), filed pursuant to this court's Order dated July 31, 2006; the court having reviewed all comments contesting the Remand Determination and all pleadings and papers on file herein, and good cause appearing therefor, the court having found that Commerce's Remand Determination is in accordance with this court's Order; it is hereby

ORDERED that Commerce's Remand Determination is AFFIRMED; and it is further

ORDERED that all parties shall review the court's Opinion in this matter and notify the court in writing on or before Monday, July 9, 2007, whether any information contained in the Opinion is confidential, identify any such information, and request its deletion from the public version of the Opinion to be issued thereafter.  The parties shall suggest alternative language for any portions they wish deleted.  If a party determines that no information needs to be deleted, that party shall so notify the court in writing on or before July 9, 2007.


___/s/ Evan J. Wallach_____
                 Evan J. Wallach, Judge

Dated: June 29, 2007
          New York, New York

## NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                                              Deputy Clerk